IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| U.S. LING INSTITUTE, INC., a Utah corporation,<br><br>    Plaintiff,<br><br>v.<br><br>KPCA NORTHWESTERN PRESBYTERIAN THEOLOGICAL SEMINARY, a Washington non-profit corporation,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00911-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Defendant KPCA Northwestern Presbyterian Theological Seminary (KPCA)'s Motion to Dismiss.[1] For the reasons stated below, the court DENIES the Motion.

### BACKGROUND[2]

This action concerns a dispute between two educational institutions that serve foreign students, known as F-1 nonimmigrant students, seeking academic degrees in the United States.[3] The Immigration and Nationality Act (INA) sets out the legal framework authorizing F-1 nonimmigrant status.[4] Federal regulations promulgated in recent decades established the Student and Exchange Visitor Program (SEVP), which certifies and oversees academic institutions who

---

[1] Dkt. 15, *Errata to Motion to Dismiss* (*Motion*).

[2] The court accepts as true all well-pleaded factual allegations contained in the Complaint when considering a motion to dismiss, and it recites those allegations here. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). When analyzing personal jurisdiction and venue, the court includes additional facts drawn from the declarations provided by the parties.

[3] *See* Dkt. 1, *Complaint*.

[4] *Id.* ¶¶ 10–11.

accept foreign students for study "to ensure compliance with immigration laws and regulations."[5]

To obtain eligibility for admission to the United States as an F-1 student, an applicant must "present[] a Form I-20 or successor form issued in the student's name" by an SEVP-certified school.[6] Federal regulations also require F-1 students to pursue "a full course of study" to maintain eligibility to remain in the United States.[7] The "full course of study" requirement imposes certain limitations on online courses (also known as "distance education").[8] Specifically, 8 C.F.R. § 214.2(f)(6)(i)(G) provides in part that:

> no more than the equivalent of one class or three credits per session, term, semester, trimester, or quarter may be counted toward the full course of study requirement if the class is taken on-line or through distance education and does not require the student's physical attendance for classes, examination or other purposes integral to completion of the class.[9]

Additionally, "[i]n-person attendance has been the law and the norm in the education industry accepting F-1 students since at least 2002."[10]

In 2001, Plaintiff U.S. Ling Institute, Inc. began operating in Utah as an English language school serving both local and international students.[11] SEVP has certified U.S. Ling to admit F-1 students.[12] U.S. Ling requires its students to attend classes in person.[13] KPCA is a religious

---

[5] *Id.* ¶¶ 14–16.

[6] *Id.* ¶ 19 (quoting 8 C.F.R. § 214.2(f)(1)(i)(A)).

[7] *Id.* ¶¶ 20–22 (citing 8 C.F.R. § 214.2(f)(5)(i)).

[8] *Id.* ¶¶ 23–30; *see also* 8 C.F.R. § 214.2(f)(6)(i)(G).

[9] 8 C.F.R. § 214.2(f)(6)(i)(G).

[10] *Complaint* ¶ 2.

[11] *Id.* ¶ 1.

[12] *Id.* ¶ 33.

[13] *Id.* ¶ 2.

seminary located in Washington state with over one thousand students.[14] SEVP has certified KCPA to accept F-1 students.[15] KPCA allows students to obtain degrees by taking the vast majority of classes online.[16] Utah-based students have applied to KPCA through its website, and KPCA has communicated with those students through electronic means, including email.[17] Additionally, according to U.S. Ling, KPCA "uses a network of agents" to recruit Utah-based F-1 students, including students enrolled at U.S. Ling, to transfer to KPCA.[18] Given its online course offerings and recruitment efforts, KPCA has induced at least thirty-five F-1 students previously enrolled at U.S. Ling to transfer to KPCA.[19] As a result, U.S. Ling estimates it has lost $400,000 in revenue.[20]

U.S. Ling filed its Complaint on December 9, 2024, asserting two causes of action: (1) intentional interference with potential and existing economic relations and (2) unfair competition.[21] KPCA now moves to dismiss the Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[22]

---

[14] *Id.* ¶¶ 3, 4, 69.

[15] *Id.* ¶ 55.

[16] *Id.* ¶¶ 3, 53.

[17] *Id.* ¶¶ 56–58.

[18] *Id.* ¶ 59.

[19] *Id.* ¶ 70. The court notes U.S. Ling pleads thirty-seven students transferred to KPCA in 2024 but later represents in its Opposition that only thirty-five students have transferred. *See* Dkt. 24, *Plaintiff's Memorandum Opposing Defendant's Motion to Dismiss* (*Opposition*) at 2, 3, 8, 10.

[20] *Complaint* ¶ 82.

[21] *See generally id.* The court also refers to U.S. Ling's first cause of action as a tortious interference claim. *See C.R. England v. Swift Transportation Co.*, 437 P.3d 343, 345 (Utah 2019).

[22] *See generally Motion.*

U.S. Ling opposes these Motions but separately moves for jurisdictional discovery.[23] The Motions are fully briefed and ripe for review.[24]

## LEGAL STANDARDS

### I. Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a party may move the court to dismiss a complaint for lack of personal jurisdiction.[25] "The plaintiff bears the burden of establishing personal jurisdiction,"[26] but it "need only make a prima facie showing" in response to a motion to dismiss.[27] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[28] A "plaintiff may defeat a motion to dismiss by presenting evidence—either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration—that if true would support jurisdiction over the defendant."[29] "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[30]

---

[23] Dkt. 26, *Plaintiff's Motion for Jurisdictional Discovery* (*Motion for Jurisdictional Discovery*).

[24] *See Opposition*; Dkt. 35, *Reply in Further Support of Motion to Dismiss* (*Reply*); Dkt. 34, *Defendant's Opposition to Plaintiff's Motion for Jurisdictional Discovery*.

[25] Fed. R. Civ. P. 12(b)(2).

[26] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[27] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation modified).

[28] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 900 (10th Cir. 2017) (citation modified).

[29] *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022) (citation modified).

[30] *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991) (citation omitted).

## II. Venue

A party may move to dismiss a complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3).[31] In opposition to such a motion, "a plaintiff may rest on the well-pled facts in the complaint . . . but only to the extent that such facts are uncontroverted by defendant's evidence."[32] When the parties present conflicting evidence, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."[33]

## III. Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."[34] To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[35] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] When determining whether a complaint meets these criteria, the court first "disregard[s] all conclusory statements of law,"[37] and then views all well-pleaded factual allegations "in the light most favorable to the nonmoving party."[38]

---

[31] Fed. R. Civ. P. 12(b)(3).

[32] *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012).

[33] *Id.* (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

[34] Fed. R. Civ. P. 12(b)(6).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[36] *Id.* (citing *Twombly*, 550 U.S. at 556).

[37] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[38] *Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (citation modified).

## ANALYSIS

KPCA seeks dismissal of U.S. Ling's claims for (1) lack of personal jurisdiction, (2) improper venue, and (3) failure to state a claim. The court addresses each argument in turn.[39]

### I. Personal Jurisdiction

When a nonresident defendant disputes personal jurisdiction in a diversity action, the "plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[40] Utah's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[41] That is, the standards are the same; the court's personal jurisdiction inquiry "collapses . . . into the more general due process standard."[42]

The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[43] For the court to exercise personal jurisdiction in accord with due process, a defendant must have sufficient "minimum contacts" with the forum state.[44] The

---

[39] KPCA suggests the court may begin its analysis by considering whether U.S. Ling's Complaint fails to state a claim. *Reply* at 5. Not so. "Because a court without jurisdiction over the parties cannot render a valid judgment," *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998), the court must begin by addressing KPCA's jurisdictional arguments.

[40] *Far West Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citation omitted).

[41] Utah Code § 78B-3-201(3).

[42] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (citation modified).

[43] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

[44] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

contacts "must be such that the defendant should reasonably anticipate being haled into court there"[45] so as not to "offend traditional notions of fair play and substantial justice."[46]

While the Supreme Court has delineated two types of personal jurisdiction, general and specific,[47] the parties agree only specific jurisdiction is relevant in this case.[48] Specific personal jurisdiction permits a court to "exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state."[49] "Specific jurisdiction is proper if (1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'"[50] In addition, even where the purposeful direction and "arising-out-of" elements are satisfied, a defendant "can defeat jurisdiction by presenting a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[51]

The court begins by assessing whether KPCA purposefully directed its activities toward Utah, then turns to the "arising-out-of" component, and concludes by addressing reasonableness.

### A. Purposeful Direction

Broadly, courts in the Tenth Circuit use three tests to determine if a defendant purposefully directed its activities at residents of the forum state: whether (a) the defendant has "continuing relationships with forum state residents;" (b) the defendant deliberately exploited the forum state market; or (c) the defendant's actions caused "harmful effects in the forum state"

---

[45] *XMission, L.C.*, 955 F.3d at 839–40 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (citation modified).

[46] *Id.* at 839 (quoting *Int'l Shoe*, 326 U.S. at 316).

[47] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[48] U.S. Ling concedes the court lacks general jurisdiction over KPCA. *Opposition* at 12.

[49] *Old Republic*, 877 F.3d at 904 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).

[50] *XMission, L.C.*, 955 F.3d at 840 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[51] *Id.* (quoting *Burger King*, 471 U.S. at 477).

(harmful effects test).[52] While U.S. Ling argues KPCA's actions demonstrate purposeful direction under each of the Tenth Circuit's three tests,[53] the court finds it has personal jurisdiction over KPCA under the harmful effects test and need not address U.S. Ling's additional arguments. To satisfy the harmful effects test, a plaintiff must establish three elements: (1) that the defendant took "an intentional action" (2) "expressly aimed at the forum state" (3) with the "knowledge that the brunt of the injury would be felt in the forum state."[54]

When conducting its analysis, the court "must examine the defendant's contacts with the forum at the time of the events underlying the dispute."[55] And where email communication constitutes a basis for establishing jurisdiction, a plaintiff must show that the defendant knew the recipient's location at the time the email was sent, otherwise "the email itself does not demonstrate purposeful direction of the message to the forum state."[56] A corporate defendant may satisfy the purposeful direction requirement by directing its agents to take action in the forum state.[57]

Relying only on the facts as alleged in U.S. Ling's Complaint, KPCA offers two arguments why its actions do not satisfy the harmful effects test. First, it argues merely operating a website accessible to Utah residents is insufficient to establish an intentional act expressly aimed at Utah.[58] Second, KPCA argues it does not know students' locations before

---

[52] *Old Republic*, 877 F.3d at 905.

[53] *See Opposition* at 12–19.

[54] *Old Republic*, 877 F.3d at 907 (citing *Calder v. Jones*, 465 U.S. 783, 789–91 (1984)).

[55] *XMission, L.C.*, 955 F.3d at 848–49 (quoting *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987)).

[56] *Id.* at 846 (quoting *Shrader*, 633 F.3d at 1248).

[57] *Daimler*, 571 U.S. at 135 n.13.

[58] *Motion* at 17 (citing *Stonebrook Jewelry, LLC v. Revolution Jewelry Works, Inc.*, 687 F. Supp. 3d 1185, 1192 (D. Utah 2023)).

they apply, so sending recruiting emails to potential students is not intentionally taking an action expressly aimed at Utah.[59]

In Opposition, U.S. Ling does not dispute these actions, standing alone, do not confer personal jurisdiction.[60] Instead, U.S. Ling contends other facts demonstrate it has satisfied the harmful effects test.[61] It is undisputed that KPCA contracts with two referral services to acquire new students.[62] U.S. Ling identifies one of these referral services as an entity known as "GoAhead Visa," which U.S. Ling argues is KPCA's agent.[63] In support of this argument, U.S. Ling provides evidence that GoAhead Visa's website directs prospective students to send payments to "kpcauniversity@gmail.com" after filling out a registration form.[64] Furthermore, U.S. Ling posits that either "KPCA or GoAhead Visa, or both, have partnered with at least two Utah-based schools . . . to recruit Utah-based F-1 students."[65] These two schools, Internexus and the Antares Language Center, issue I-20's to students applying to KPCA.[66] In Reply, KPCA contends U.S. Ling's arguments regarding the relationships between KPCA, GoAhead Visa, Internexus, and Antares are "pure conjecture," and, even if true, do not establish the "deliberate targeting of Utah-based students" necessary to satisfy the harmful effects test.[67]

---

[59] *Id.* at 17–18. The court finds this argument unpersuasive because, as discussed below, evidence suggests KPCA took multiple actions directed toward individuals located in Utah related to U.S. Ling's claims *after* learning students' locations.

[60] *See Opposition* at 18–19.

[61] *See id.*

[62] *Id.*; *see also* Dkt. 14-1, *Declaration of Jong Taek Chung in Support of KPCA Northwestern Presbyterian Theological Seminary's Motion to Dismiss* (*Chung Decl.*) ¶ 17.

[63] *Opposition* at 18–19; *see also* Dkt. 28-2, *Declaration of Gabriel Goncalves* (*Goncalves Decl.*) ¶¶ 3–32. Without naming GoAhead Visa, KPCA admits it contracts with two referral services. *Chung Decl.* ¶ 17.

[64] *Goncalves Decl.* ¶¶ 3–12.

[65] *Opposition* at 19; *see also Goncalves Decl.* ¶¶ 17–32; Dkt. 24-1, *Declaration of Zaven A. Sargsian* ¶¶ 4–11.

[66] *See Goncalves Decl.* ¶¶ 13–14, 25.

[67] *Reply* at 13.

The court finds U.S. Ling has provided sufficient evidence to—at a minimum—make a prima facie showing of purposeful direction under the harmful effects test by showing KPCA took intentional actions aimed at Utah by targeting Utah-based students, either through its own acts or the acts of entities acting on its behalf. The evidence demonstrates: (1) KPCA uses two referral services,[68] one of which (2) includes information on its website about KPCA,[69] (3) directs applicants to remit payments to a Zelle account associated with KPCA,[70] and which also (4) invokes Utah-based schools as entities that "will issue and forward" I-20's to students' emails.[71] The court draws the reasonable inference at this stage that KPCA had knowledge these actions would cause injury in Utah given (1) GoAhead Visa's relationship with Utah-based schools, and (2) a substantial number of students located in Utah ultimately enrolled at KPCA. The court therefore concludes U.S. Ling has met its burden to make a prima facie showing that KPCA purposefully directed its activities at Utah.

### B. "Arising-Out-Of" Component

Having concluded KPCA purposefully directed activities at Utah, the court now addresses whether U.S. Ling's alleged injuries "arise out of or relate to those activities."[72] "The arising-out-of component of the [minimum contacts] test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum."[73]

---

[68] *Chung Decl.* ¶ 17.

[69] *Goncalves Decl.* ¶ 16.

[70] *Id.* ¶¶ 11–12, 23–24.

[71] *Id.* ¶¶ 14, 25.

[72] *XMission, L.C.*, 955 F.3d at 840 (citation omitted).

[73] *Id.* (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264–65 (2017)).

Here, the parties present conflicting evidence as to whether U.S. Ling's injuries arise out of KPCA's actions. U.S. Ling argues its causes of action "stem directly from KPCA's contacts with Utah."[74] That is, according to U.S. Ling, "KPCA's recruitment has caused thirty-five Utah-based students to terminate their relationship with U.S. Ling and transfer to KPCA,"[75] which has resulted in U.S. Ling allegedly suffering hundreds of thousands of dollars in lost revenue.[76] While KPCA denies it has ever targeted any recruitment efforts toward Utah,[77] the court must resolve factual disputes in U.S. Ling's favor. The court therefore finds U.S. Ling has established an "adequate link" between KPCA's alleged targeting of Utah students and the harm suffered by U.S. Ling. U.S. Ling has therefore satisfied the "arising-out-of" component of the minimum contacts test.

### C. Reasonableness

Even where a plaintiff has established purposeful direction and the "arising-out-of" elements of the minimum contacts test, a defendant may demonstrate jurisdiction is improper "by presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable,"[78] such that "the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice."[79] In evaluating reasonableness, the court considers: "(1) the burden on the defendant, (2) the forum State's interest in resolving the

---

[74] *Opposition* at 19.

[75] *Id.* at 20; *see also* Dkt. 24-10, *Declaration of Narine Sarkissian* (*Sarkissian Decl.*) ¶¶ 7–10.

[76] *Sarkissian Decl.* ¶ 17. The parties dispute the number of students who terminated their relationships with U.S. Ling that ultimately enrolled at KPCA. *Compare Sarkissian Decl.* ¶¶ 7–12 (describing how thirty-five students transferred from U.S. Ling to KPCA in 2024), *with Chung Decl.* ¶¶ 25–28 (describing how thirteen KPCA students in 2024 and eighteen KPCA students in 2025 transferred from U.S. Ling). Given the conflicting Declarations, the court must resolve this dispute in U.S. Ling's favor. *Williams*, 927 F.2d at 1131.

[77] *Reply* at 13–14; *see also Chung Decl.* ¶¶ 17–19.

[78] *XMission, L.C.*, 955 F.3d at 840 (citation modified).

[79] *Old Republic*, 877 F.3d at 908 (quoting *Shrader*, 633 F.3d at 1240).

dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies."[80]

Having found U.S. Ling has met its burden to demonstrate minimum contacts, the court now determines whether KPCA has shown the exercise of jurisdiction would be unreasonable.[81] But KPCA failed to argue reasonableness until its Reply.[82] The court therefore deems the issue waived.[83] Even if the court were to weigh the reasonableness factors, though, it would not find any one factor strongly supports KPCA's position. The court therefore concludes the exercise of personal jurisdiction over KPCA would not "offend traditional notions of fair play and substantial justice"[84] and declines to dismiss the Complaint for lack of personal jurisdiction.[85]

## II. Venue

The court now turns to KPCA's argument that the court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(3) because the District of Utah is an improper venue.[86]

Venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[87] But "venue is not limited to the district with the

---

[80] *XMission, L.C.*, 955 F.3d at 840 (citation omitted).

[81] *See Dudnikov*, 514 F.3d at 1080 ("[W]ith minimum contacts established, it is incumbent on defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" (citation omitted)).

[82] *See generally Motion*; *Reply* at 14.

[83] *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief.").

[84] *International Shoe*, 326 U.S. at 316 (citation modified).

[85] Accordingly, the court will deny U.S. Ling's Motion for Jurisdictional Discovery as moot.

[86] *See Motion* at 18–19.

[87] 28 U.S.C. § 1391(b)(2). The parties agree that whether venue is proper in this District hinges on the application of this subsection of the venue statute. *See Motion* at 18–19; *Opposition* at 21–23.

*most* substantial events or omissions."[88] Courts in the Tenth Circuit use a two-part test when reviewing a venue challenge under this section. First, the court must "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims."[89] Second, the court must "determine whether substantial events material to those claims occurred in the forum district."[90] "The substantiality requirement is satisfied upon a showing of acts and omissions that have a close nexus to the alleged claims."[91]

U.S. Ling's claims involve allegedly wrongful and unfair business practices carried out by KPCA.[92] KPCA argues all conduct relevant to U.S. Ling's claims occurred in Washington.[93] According to its Office Administrator, KPCA is a Washington nonprofit corporation that has one bank account located in Washington and makes all decisions and takes all actions in Washington.[94] But U.S. Ling describes several acts related to its claims that occurred in Utah.[95] For example, (1) two schools providing I-20's to students who enroll at KPCA are located in Utah and appear to have routed payments to KPCA;[96] (2) when prospective KPCA students attending U.S. Ling completed transfer applications, KPCA learned they were located in Utah

---

[88] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (citations omitted).

[89] *Id.* at 1166 (citations omitted).

[90] *Id.* (citation modified).

[91] *Id.* (citation modified).

[92] *See Complaint* ¶¶ 77–93.

[93] *Motion* at 18–19 (first citing *Complaint* ¶¶ 46–76, 79, 89; and then citing *Chung Decl.* ¶¶ 3, 7–9).

[94] *Chung Decl.* ¶¶ 3, 7–9.

[95] *Opposition* at 22–23.

[96] *See Goncalves Decl.* ¶¶ 3–32.

and subsequently provided them with transfer forms;[97] and (3) students seeking to transfer from U.S. Ling to KPCA sent identical emails to U.S. Ling administration officials.[98]

The court finds these acts have a close nexus to U.S. Ling's claims.  U.S. Ling has provided evidence that KPCA contracted with Utah entities as a part of its recruitment efforts.[99]  It is the alleged result of these recruitment efforts—dozens of students transferring from U.S. Ling to KPCA—that U.S. Ling seeks to redress by bringing its claims.[100]  Furthermore, U.S. Ling points the court to evidence demonstrating that KPCA not only communicated with students it knew were located in Utah but also directed those Utah-based students to sever their relationships with U.S. Ling.[101]  That is, the evidence suggests KPCA provided U.S. Ling students with identically-worded emails to effect their transfers to KPCA.[102]  Given the transfers constitute the injury allegedly suffered by U.S. Ling, the court finds the acts described above have a sufficiently close nexus to U.S. Ling's claims to satisfy the substantiality requirement.

Because a substantial part of the events related to U.S. Ling's claims occurred in Utah, the court finds this District is a proper venue and declines to dismiss U.S. Ling's claims under Rule 12(b)(3).

---

[97] *Chung Decl.* ¶¶ 20–23.

[98] *Sarkissian Decl.* ¶¶ 14–16 (stating the emails were sent from students with limited English-language proficiency and included the following language: "I am writing to inform you, with great enthusiasm, that I have been accepted to the KPCA Northwestern Presbyterian Theological Seminary, an important step in fulfilling my long-time dream of studying theology.  Therefore, attached to this email, I am sending the institution's admission letter and the necessary release form for the transfer to be formalized.").

[99] *See supra* § I(A).

[100] *See Complaint* ¶¶ 82, 90–91; *Sarkissian Decl.* ¶¶ 7–17.

[101] *See Sarkissian Decl.* ¶¶ 14–16.

[102] *See id.*

### III. Failure to State a Claim

The court now considers KPCA's arguments for dismissal under Rule 12(b)(6). U.S. Ling brings two claims for relief under Utah law: (1) tortious interference and (2) common law unfair competition.[103] KPCA first argues the court must dismiss U.S. Ling's claims because they improperly seek to enforce regulations lacking private rights of action.[104] In the alternative, KPCA argues U.S. Ling failed to plausibly state its claims.[105] The court addresses each argument in turn.

#### A. Private Right of Action

KPCA first argues U.S. Ling's claims are improper attempts to enforce federal regulations where Congress declined to create private rights of action.[106] The court disagrees. KPCA is correct that "private rights of action to enforce federal law must be created by Congress,"[107] and a regulation cannot create a private right of action where Congress has not authorized one.[108] But there is no categorical bar against a plaintiff predicating a state law tort claim on a violation of a federal regulation—even one lacking a private right of action.[109] Here, KPCA appears to suggest Congress's immigration enforcement scheme preempts U.S. Ling's claims.[110] But KPCA does not sufficiently develop this argument.[111] And because a defendant

---

[103] *Complaint* ¶¶ 77–93.

[104] *Motion* at 19–21.

[105] *Id.* at 22–25.

[106] *Id.* at 19–21.

[107] *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citation omitted).

[108] *Id.* at 291 (citation omitted).

[109] *See Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1338–40 (10th Cir. 2015) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), for the proposition that state tort suits based on a violation of the FDCA are not categorically preempted).

[110] *See Motion* at 19–21.

[111] *See id.*

has the burden to establish preemption applies,[112] the court declines to dismiss U.S. Ling's claims on this ground.

The court now turns to whether U.S. Ling has plausibly alleged its claims.

### B. Tortious Interference Claim

KPCA argues the court should dismiss U.S. Ling's tortious interference cause of action for failure to state a claim.

To establish tortious interference under Utah law, a plaintiff must show: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff."[113] "Under Utah law, a party acts with improper means only when it violates a statute, regulation, established industry standard, or recognized common-law rule."[114]

KPCA argues U.S. Ling's tortious interference claim must be dismissed because KPCA has not engaged in any unlawful activity constituting improper means.[115] Specifically, KPCA contends its SEVP certification demonstrates it has complied with applicable federal regulations.[116] But in Opposition, U.S. Ling points out that in addition to alleging KPCA violated federal regulations, it also alleges KPCA violated "industry standard and practice."[117]

The Complaint alleges KPCA violated the "established standards, practices, and customs of the education industry that accepts F-1 students" by offering online classes in the manner it

---

[112] *See Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1133–34 (10th Cir. 2007) (citation omitted).

[113] *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (citation modified).

[114] *Behav. Med. Consulting, LLC v. CHG Companies, Inc.*, No. 23-4047, 2024 WL 4235124, at *7 (10th Cir. Sept. 19, 2024) (citing *C.R. England*, 437 P.3d at 353).

[115] *Motion* at 22–23.

[116] *Id.*

[117] *Opposition* at 25; *see also Complaint* ¶ 79.

does.[118]  KPCA does not address this allegation in its briefing except to argue that "KPCA is in the market for religious students, while [U.S.] Ling appears to be in the market for English-language students."[119]  The court construes KPCA as arguing the same industry standards do not apply to U.S. Ling and KPCA.  But on a motion to dismiss, the court must "accept all well-pleaded factual allegations in the complaint as true."[120]  And because U.S. Ling plausibly alleges "KPCA and U.S. Ling are competitors in the market for F-1 students,"[121] it would be improper to resolve this factual dispute in KPCA's favor.[122]  The court therefore finds U.S. Ling has plausibly stated a claim for tortious interference and denies KPCA's motion to dismiss this cause of action.

### C. Unfair Competition Claim

The court now examines U.S. Ling's unfair competition claim.  "Under Utah common law, unfair competition includes—but is not limited to—passing off, palming off, imitating, and causing or likely causing confusion or deception."[123]  A "probability of confusion or deception" is sufficient.[124]

KPCA argues U.S. Ling has failed to adequately plead unfair competition because (1) the parties do not compete in the same market and (2) "there is no risk of confusion or deception" because U.S. Ling has not pleaded that "students are confused regarding the source of their

---

[118] *Complaint* ¶ 79.

[119] *Motion* at 24.

[120] *Sinclair Wyoming Ref. Co.*, 989 F.3d at 765 (citation modified).

[121] *Complaint* ¶ 86.

[122] Indeed, the existence of an industry standard is often demonstrated by expert testimony.  *See England Logistics, Inc. v. Kelle's Transp. Serv., LLC*, 559 P.3d 45, 59 (Utah. Ct. App. 2024).

[123] *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1233 (10th Cir. 2023) (quoting *Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 862 (Utah 2008)) (citation modified).

[124] *Id.* at 1233–34 (quoting *Overstock.com, Inc.*, 192 P.3d at 863).

17

educational services" or "that KPCA passes its own services off as, or imitates" U.S. Ling's services.[125]

In Opposition, U.S. Ling argues it has stated an unfair competition claim by alleging (1) the parties are competitors, and (2) KPCA made material misrepresentations to prospective students that harmed U.S. Ling.[126] Directing the court to *Vitamins Online, Inc. v. HeartWise, Inc.*,[127] a case from this District applying Utah law, U.S. Ling argues its allegations are sufficient to make out a claim for unfair competition because Utah has expanded the scope of unfair competition to acts beyond passing or palming off and imitation.[128]

The court agrees with U.S. Ling. In *Vitamins Online*, the court found a defendant liable for unfair competition under Utah law after evidence presented at a bench trial demonstrated the defendant (1) competed with the plaintiff, (2) made misrepresentations, (3) that were material, and (4) caused injury to the plaintiff.[129] Here, U.S. Ling has alleged facts supporting an unfair competition claim on a similar theory. First, it alleges "KPCA and U.S. Ling are competitors in the market for F-1 students."[130] Second, it alleges "KPCA has made false representations . . . that it is fully complying with U.S. regulations applicable to F-1 students, including 8 C.F.R. 214.2, and that students will maintain—and not jeopardize—their F-1 visa by attending KPCA and courses that [are] entirely, or almost entirely, online."[131] Third, these alleged

---

[125] *Motion* at 24–25.

[126] *Opposition* at 27 (citing *Complaint* ¶¶ 74, 85–93).

[127] No. 2:13-cv-00982-DAK, 2020 WL 6581050, at *15–21 (D. Utah Nov. 10, 2020), *aff'd and remanded sub nom.*, *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222 (10th Cir. 2023).

[128] *See Opposition* at 26–27.

[129] *See Vitamins Online*, 2020 WL 6581050, at *15–21 (D. Utah Nov. 10, 2020) (analyzing the plaintiff's Lanham Act false advertising claim and explaining the court's analysis "applies with equal force to its" unfair competition claim).

[130] *Complaint* ¶ 86.

[131] *Id.* ¶¶ 88–89.

misrepresentations are material because they have "induce[d] F-1 students who are attending U.S. Ling to terminate their enrollment and transfer to KPCA."[132] And finally, these actions have allegedly caused harm to U.S. Ling by leading to "hundreds of thousands of dollars in lost revenue."[133] KPCA does not attempt to distinguish *Vitamins Online* in Reply,[134] and the court sees no reason to do so. Accordingly, the court finds U.S. Ling has plausibly stated a claim for unfair competition and denies KPCA's motion to dismiss that cause of action.

## CONCLUSION

For the reasons discussed above, the court DENIES KPCA's Motion to Dismiss[135] and DENIES as moot U.S. Ling's Motion for Jurisdictional Discovery.[136]

SO ORDERED this 18th day of August 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[132] *Id.* ¶ 88.

[133] *Id.* ¶ 82.

[134] *See generally Reply*.

[135] Dkt. 15.

[136] Dkt. 26.